Good morning. Judge Rosenbaum, we're very pleased this morning again to have with us our colleague from the Southern District of Florida, Judge Michael Moore. I should say Chief Judge Michael Moore. He drew the tough duty. He's here helping us in addition to his case load in Southern Florida in a week where we have 13 cases, but it's four on Tuesday and four on Wednesday, but only three on Thursday and three on Friday. He's got the two days of four. So we really appreciate him coming to help us this week and doing that work on top of all that he already has to do as the Chief Judge of the Southern District of Florida. We're familiar with all of your cases that we'll hear this morning. We've read your briefs, the authority cited in your briefs, at least portions of the record. So in the limited time that's available to each and to all of you, 15 minutes aside, you should feel free to get Please don't treat the red light as aspirational. Pay attention to that. When it shines, it's time to wrap it up. If you're answering a question from the court, feel free to finish your answer. If we need you to have more time, we'll give it to you. But that'll be our decision. So our first case is United States v. Hamidullah. Mr. Hernandez. Good morning, Your Honors. May it please the Court. I represent Mr. Hamidullah in this appeal. Very briefly, he was convicted of sex trafficking charges. He entered a plea of guilty to running a commercial sex trafficking operation involving adult women in Florida and Washington, D.C. I mean, basically, your argument is that when the district court upwardly varied substantially from the guideline range, it relied upon a lot of facts in the pre-sentence investigation report that your client had objected to and that the government did not put any evidence on to deal with those objections, right? And so the district court shouldn't have relied on those facts without that proof from the government. That's your argument, isn't it? Essentially, Your Honor. Basically, the two issues raised are that the proceedings at sentencing were procedurally unreasonable, and we'll have to address the standard at the court reviews first because the government is arguing that that was not properly raised below because the defense counsel didn't engage in some type of appellate soliloquy. We shouldn't reach an issue, though, of substantive unreasonableness, should we, if we agree with you that there was the procedural error. Correct, Your Honor. It's a bifurcated test, and if you find that it was procedurally unreasonable, which I respectfully submit you pretty much have to, given the way the government proceeded at sentencing, you don't have to get to the issue of substantive unreasonableness. Essentially, what happened at the sentencing was that the district judge allowed defense counsel to state their objection for the record. They would state their objection. He would then return to the government, what's your position? We oppose, or on occasion, I think once they agreed, and that was the record. Well, and the government said, we would proffer this. This is what we would show, right? We would offer evidence that would show this, but they never actually offered that evidence, right? Correct, Your Honor. At points, they would say, you know, if the case had gone to trial, this is the evidence we would present. We would have the young ladies that were involved, the women involved that would have come to testify, but... And you're not challenging, as I understand it, the application of the vulnerable victim enhancement. What you're challenging is the fact that the district court relied on facts in the PSI that you had objected to. I believe there was an objection raised to vulnerable victim enhancement, and other than hearing it, and hearing the fact that the government didn't agree, that was it. There was no other evidence presented. In fairness to the judge, he did... You have a question, I'm sorry. Well, I was going to say, he admitted in the factual proffer to many of these, this conduct. It seemed like there was, he admitted to plenty of facts that would support the vulnerable victim enhancement. If I thought from the brief, you weren't challenging that enhancement. What you were challenging were the other, the facts that the district court cited when it upwardly varied from the guideline range. Yes, Your Honor. Essentially, that's correct, but the heart of my objection to the procedural unreasonableness, again, is the objection. The government has the burden of proof by a preponderance of evidence, and they have to present clear and strong evidence to support the government's position. They didn't do that. In fairness to the district judge, he took, basically, you know, kind of went through the cataloging, and he was, you know, urging everybody to kind of go through. He just wanted for the record the catalog, and he told the government that he would give the government whatever time they needed to present, and in fact, at the proper time in the sentencing proceeding, he turned to the government and offered them the opportunity to present evidence, expecting, I'm sure, that they were going to present something for whatever reason. It's not clear to me from the sentencing transcript that he really did expect them to do that. Well, he offered them, Judge. Whether he did or not, I've been puzzled by this case, about why it unfolded the way it did. You asked for 180 months, the bottom of the guideline range. The government asked for 188. It seemed to me that there was more than enough evidence to support the vulnerable victim enhancement, which, again, I didn't think you were challenging on appeal, that insofar as your debate in the district court was between 180 and 188, perhaps the government didn't think that it needed to prove more, but what ends up happening is there's all this other stuff in the PSI that the district court cites when it upwardly varies to 420 months. Which was twice what the, you know, and it's a little confusing in terms of the original guidelines were 151 to basically 17 and a half years. And then he got one, because he cooperated, he got a one-level reduction. So then it became 15-year miniman, which I'm just going to deal with the 15 miniman, which applied here and wasn't objected to. And then the 188, and that's what the government recommended at sentencing. That's what the plea agreement talked about. And then again, If it imposed a sentence of 188, we wouldn't be here, would we? We might, I don't think we'd be here at oral arguments, whether they would be on appeal. That's another story. But I doubt that I would be standing here trying to argue anything for you, before you, Your Honor. Yeah, you doubt we'd be entertaining argument about whether that was unreasonable. That's right, Your Honor. So, but, and again, for whatever reason, the government chose not to present any witnesses at all. So I would respectfully submit that it was procedurally unreasonable. And then, and again, it's a bifurcated test, so I don't believe the court has to get to substantive unreasonableness. It's a sex trafficking case. These are tough cases. The facts are always tough and ugly. And I don't plan to stand here and try and defend, you know, operators of sex trafficking and the type of activity that they engage in. But the statute and the sentencing guidelines provide for this. Mr. Hamidullah's sentence was enhanced at various parts, points, based on the conduct. He, again, entered a plea of guilty. He did try to cooperate. His wife, who, again, admittedly had a lesser role and was originally one of the victims in the case, but she assisted him in running his organization and recruiting women. And she got essentially time served and probation. Mr. Hernandez, let me make a suggestion to you, and that is, why don't you save this five and a half minutes plus the other two minutes that you had reserved for rebuttal? Because I think we understand your position. And you'll have seven and a half minutes for rebuttal, and we'll hear, let's hear from the government. Thank you. Does that sound right? And I thank you for your recommendation. I will do it. Well, I'll wait for the rebuttal. But what we're requesting, again, is remand for resentencing before a different judge, which is another issue. Well, look, I can only speak for myself. I don't think that there's a basis for a remand for resentencing before a different judge. I don't... Well, again... Maybe we do need to talk about that first before you sit down. It's not clear to me that this judge, if we were to vacate and remand, that there's anything in the record to suggest that the district judge couldn't follow our mandate. Well, I would respectfully urge the court to go back to the sentencing transcript, which I'm sure you have gone to and looked at. But the judge did specifically address Mr. Hamadoun, told him he was a bad person. And if he was looking for absolution, he was not going to get it from the court. Yeah, I mean, but Mr. Hernandez, if you're a client, if the government's able to prove these disputed facts, that would more than support the district judge saying those sorts of things, right? I don't believe a judge necessarily should be saying that type of thing in a sentencing, particularly if he's planning to go above the guidelines. In terms of a different judge, I don't believe that applying the standard, and I don't think you have to find that the judge was bad or had some bad intent. I just don't think any reasonable observer would think that this judge would be able to go back and put aside everything that he believes and he said. These are horrific facts. I mean, granted, they were disputed, but you would agree, would you not, that what the PSI at least stated as facts that were disputed, if true, were horrific, weren't they? Yes, Your Honor, no question about it. So I would urge the court to go back and look at the what he said aside and resentenced anything less than what he already did. And based on the fact that the government didn't present evidence under the law generally, the general rule is, if they didn't present it, they shouldn't be allowed to get a second bite of the apple at any new sentencing. So I would ask that the court bar. Well, but it seems to me the problem with that is that where the government was only advocating for 188 months and you were advocating for 180 and then what the district court does is then upwardly varies to 420, that that's a different predicament. The government could have very well defended a 188-month sentence based on this record. So that's our request. I understand your request. I want to take your advice. You see generally it's not allowed. The court certainly has the discretion to allow that. We would ask that you not allow it. And I will take your advice and sit down and reserve for rebuttal. Okay. Well, we'll keep you with four minutes for rebuttal and we'll now hear from Ms. Rhodes. Good morning. May it please the court. With regard to the state of the record that would support the sentencing decision in this case, of course, you have the pre-sentence report and many, many, many of the facts in the pre-sentence report were undisputed. You also have... And many, many were disputed. Essentially, they come into five categories. The district court also... And I'll get to that in a moment. You also had the undisputed facts that were stipulated as part of the plea agreement. But the problem is the transcript goes on for several pages and includes a lot of, I mean, really horrific facts and very specific facts that are neither articulated in nor can be factual proffer nor from any other aspects of the PSI that have not been objected to. That's what the problem is. There are other parts of the pre-sentence investigation report. There were the victim witness... But even so, and the victim witness statements are also awful. But again, if you look at what the district judge said during the sentencing and what he attributed to the different victims, those things do not come from the victim witness statements. Those things come from the PSI and the parts that were objected to. And the problem is the specificity of the statements that he attributes to the victims cannot be inferred from the victim witness impact statements. That's the problem. Okay. With regard to, say, the issue of the abortions, whether they were forced. Oh, and also the defendant and defense counsel made certain assertions during the sentencing hearing which support the decision of the district court. For example, with regard to... It... Maybe I'm just not... I don't understand this case, but here are several things the district court specifically mentioned at sentencing, okay? Whether the defendant brutally raped A.W., whether he forced violent sexual acts on his victims, which included whipping and choking, whether he forced his victims to get abortions, whether he was rough with A.W., hitting or slapping her for any perceived disrespect, and whether he choked her, whipped her with a chain and a dog leash and forced her to have anal sex, whether he tricked the victims with false promises of modeling opportunities, and whether he forced his victims to use Xanax to help them continue prostituting themselves. These are all facts mentioned by the district court when it upwardly varies from the guideline range to a huge degree that were disputed aspects of the PSI, right? That's correct. Well, I don't understand how you can defend that sentence on appeal. I really am at a loss to understand why the government just didn't confess error in this case and ask us to remand for opposing counsel said. It's a hornbook sentencing law that the district court, if there are objections to facts in the pre-sentence investigation report, that the government is obliged to prove those facts if they want the district court to rely on those facts in fashioning a sentence. Isn't that just basic? Well, first of all, as you noted, Judge Pryor, when we came to the sentencing hearing, we thought our obligation was and our duty was to defend the sentence that we were advocating. We had agreed that we were going to recommend a sentence within the properly calculated guidelines range. And the defendant stipulates in his brief, he agrees that the court calculated the guidelines range correctly at 180 to 188 months. I agree with all that, but after the district court upwardly varies to 420 months and relies on a lot of disputed facts in the PSI, the government didn't say at the sentencing hearing, well, wait a minute, Your Honor, I think we need to make a record to support some of that. Nor did the government, once the appeal was filed, say in its brief, you know, this didn't unfold the way we expected it to. The district court relied on a lot of facts that we didn't think we needed really to prove this obviously was error. That's my problem. I don't understand why it unfolded like that. Well, one of the reasons why it unfolded like that, Your Honor, was because we did proffer what we would have established. And when... Well, a proffer doesn't satisfy your burden. But we proffered what we thought we could prove, what we knew we could prove, and which some of the facts that we proffer were stated in the plea agreement, and the defendant agreed that we could prove those facts beyond a reasonable doubt. Some of them. Yes. Not all of them. And then at the conclusion of the sentencing hearing, when the defense had heard our proffer, they heard what the sentencing judge had intended to, the sentence that the sentencing judge had imposed, intended, not intended, at that point he had imposed the sentence. The judge asked at that point, does the defendant have any objections to the sentence or the manner in which it was imposed? He says, then, I suppose you can object to the substantive reasonableness of the sentence, and the defense attorney said yes. And later on, before concluding the proceedings... The defendant's not obliged to make any further objection other than the objections he's already made to the PSI. But the facts that went to the PSI primarily went to the calculation of the guidelines range. At least that's one way that you could view this record. Let me ask you a question. Do you agree that the judge relied on, at least in part, issuing the sentence he gave, the facts that Judge Pryor just recited a few moments ago? Yes, but I also agree... Let me ask you something. Do you also agree that those particular facts are nowhere to be found in anything other than the PSI parts that were objected to and the proffer that was not proven?  Can you just first answer that question? Victim... I'm sorry. What we presented as sentencing were victim-witness statements, which were separate and apart from the pre-sentence report. And those statements include facts which support the sentencing decision of the district court. Okay, but the specific facts that Judge Pryor asked you about, where were those? Those were not... I didn't see them in any of the victim-witness impact statements. Maybe I missed them, and if I did, then it'd be helpful, actually, if you pointed them out, because then I could consider them. Okay. Thank you. With regard to the statement about abortion, which was one of the things I was trying to get to... First of all, the sentencing memorandum itself says... ...which... ...created a heightened sense of applied pressure to have abortions. So he's admitting that there was an environment which would have been consistent with the idea that the women would have abortions. In addition to which, in the pre-sentence report, in the addendum at page 93... I'm sorry, which is document 93. At page 29, which is the sworn declaration of victim losses, and I believe it's TR, that the whole name is in there, and there's a last name there. So I believe it would have been TR. She said, I lost a child by abortion that I was made to do. So a couple of those two things together, that is consistent with the finding that these women were forced to have abortions. So I guess, I mean, what I'm hearing is we're not concerned about what the judge relied on that had been admitted or proved. We're concerned about what had been considered that had not been proved. So my question is, would you have any evidentiary problem if this gets remanded, proving up all of those facts that the judge relied on that were not proved? No, sir. You don't have any problem with that? No, sir. Okay. But our position is that that's unnecessary because the parts of the record, there are parts of the record that would support the findings of the district court. For example... Everything... So is it your position, Ms. Rhodes, that everything the district court stated as facts supporting this upward variance, that there's actual evidentiary support without a proffer, without disputed aspects in the PSI, that you are obligated to then put on evidence to deal with the objection? You're saying that every fact that the district judge relied on, we've got an adequate record for? What I'm saying is, with regard to the areas that the defendant disputed, that the plea agreement, the undisputed facts in the pre-sentence report, the victim witness statements, and the victim loss statement by TR supports... What about the Xanax and the chains and everything else that Judge Pryor referred to a few minutes ago? The victim impact statements reference the beating with a fishing pole, with having their hands tied, with uses of dog leashes, those types of things. And the statements also say, even with regard to whether or not the women were raped, that that was disputed. And they say that they were victimized in every way, physically, mentally, emotionally. And were those victim impact, victim witness impact statements sworn? I believe TR's statement says that it's under the penalty of perjury. And that's the one with regard to the forced abortions. You're telling me that... I thought that AW and JR's victim impact statements generally alleged that the defendant was physically and sexually abused. But I don't remember anything in those victim impact statements that said that he had choked and whipped with a chain and a dog leash and forced AW to have anal sex. Is that in the victim impact statement? Oh, I'm sorry. But what AW said was, as a result of the mental and emotional and physical and sexual abuse that he committed, and he's disputing that he raped her. You know, it's one thing to use a general term like the sexual abuse he committed. It's another thing to have a statement in the PSI that he forced her to have anal sex, that he whipped her with a chain and a dog leash. He objects to that fact. And there's nothing I can tell in the victim impact statement that's specific about that. Am I wrong? You're correct. He says... This is incredibly frustrating, Ms. Rhodes. I do not understand the government's defense of this appeal. I mean, this is hornbook law. If the district court wants to rely on those facts at sentencing to support an upward variance, you've got to prove it if they're disputing it, isn't it? As I stated, we went in, we knew what our burden was. We satisfied our burden. And then we... By proffering it? We satisfied our burden to establish facts, and I think... To support a guideline sentence. That's what we asked for. Yeah, I understand that. But what I don't understand is this. I totally get that. I totally get what the assistant U.S. attorney was thinking at the sentencing hearing when only asking for a 188-month sentence, okay? But here's the thing I don't understand is there are all these objections that are lodged at statements of fact in the PSI, and the government makes a proffer about all of them. And then the district judge goes off and takes those facts as having been established and imposes a sentence that's more than twice the upper end of the guideline range, and you defend that. So you weren't required to prove anything more? I don't understand that. Just to say that given what we told the judge that we could do, given that the defendant did not object to our proffer, we submit that we're at least in plain error, and that based upon the... I don't see how it's plain error when they lodged objections to those facts in the PSI. They didn't lodge objections to our proffer at the conclusion of the sentencing hearing. After the court had advised the defendant that he was going to impose a 482-month sentence. Why would they lodge an objection to a proffer in the absence of you actually putting on that evidence? All a proffer is to say, well, this is what we would prove. All right, do it. We've cited cases in our brief which say that that is sufficient when there is no objection to the sufficiency of the proffer. There's no indication that the proffer in and of itself... I can't remember right now that there is a case that we cited where this court held that the proffer was insufficient because the defendant disputed that we could actually prove what we stated that we could prove. He presented evidence to show that there was no way that we could ever have proved what we said that we were going to prove. In this instance, the assistant United States attorney told the district court what we could prove. The defendants said nothing, did not dispute that, did not say, Judge, you can't base the sentence on those facts. And we submit that in that case, at least we're in plain error. But let me ask you something just based on the argument today and everything. I mean, I understand what your position was coming in, but now that we've sort of talked about this and had oral argument on it, is it still after the oral argument the government's position that there was no error here? Or, I mean, is it something that you might want to concede error on? Well, I can see the court's view. I'm not sure that I'm rightly in a position to concede the error. I can see... I understand. Okay. Fair enough. We've allowed you to go over a fair amount, Ms. Rhodes. I think we understand your position. Mr. Hernandez, if you have anything... I appreciate the opportunity. Thank you. Thank you. Your Honor, unless the court has questions, I think the court understands the issues. Okay. I'm going to sit down and shut up. Thank you. You were court appointed, Mr. Hernandez. We appreciate your willingness to take that appointment and to discharge your obligation very well. Thank you. Okay. Kerling v. Kent.